NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.E.

No. 1 CA-JV 25-0037

FILED 07-15-2025

---

Appeal from the Superior Court in Mohave County
No. S8015JD202400016
The Honorable Rick A. Williams, Judge

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant Vanessa E.*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

Mohave County Legal Advocate, Kingman
By Steven Zagorski
*Counsel for the Appellee Child*

---

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which
Presiding Judge D. Steven Williams and Judge Michael S. Catlett joined.

---

**J A C O B S**, Judge:

¶1 Vanessa E. ("Mother") appeals the juvenile court's termination of her parental rights to her son, J.E. She contends the court should have appointed a permanent guardian for J.E. instead of terminating her parental rights. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Mother has a history of criminal activity and substance abuse. In January 2023, she pled guilty to a felony drug offense and was placed on probation. Six months later, while Mother was pregnant with J.E., the Arizona Department of Child Safety ("DCS") received a report that Mother had tested positive for amphetamine, methamphetamine, opiates, and oxycodone. J.E. was born in December 2023.

¶3 In January 2024, DCS received reports that Mother had syringes, methamphetamine, and marijuana pipes in her residence's bedroom. Two months later, Mother became intoxicated, stole the keys to her friend's car, left three-month-old J.E. with an unknown individual, and crashed the car down the street. One of Mother's roommates brought her home and contacted law enforcement. The unknown individual gave J.E. back to Mother and left the property when law enforcement arrived. Law enforcement found J.E. in the front seat of a car, lying on an oil can, gloves, and fabric, screaming and crying. Mother was nearby, stabbing the tires of another vehicle. Law enforcement arrested her shortly thereafter.

¶4 DCS took custody of J.E., placed him in foster care, and petitioned the juvenile court for dependency, which the court granted. Mother later pled guilty to another felony and admitted to violating the terms of her probation. The superior court sentenced Mother to two consecutive terms of 1.5 years' imprisonment.

¶5 In August 2024, DCS moved to terminate Mother's parental rights under A.R.S. § 8-533(B)(4), alleging she was "deprived of her civil liberties due to the conviction of a felony, and the sentence [was] of such length that the child will be deprived of a normal home for a period of years." Three months later, DCS relocated J.E. to live with maternal aunt ("Aunt") in California, and Mother subsequently moved to appoint her as J.E.'s permanent guardian.

¶6 In February 2025, the juvenile court held a termination adjudication hearing, where J.E.'s case manager, Aunt, and Mother testified. J.E.'s case manager testified J.E. was adoptable and that Aunt was

a prospective adoptive placement. She concluded termination of Mother's parental rights was in J.E.'s best interests because it would give J.E. permanency. Aunt testified that J.E. had been bonding with her family since being placed there in November 2024 and that J.E. was present during Aunt's calls with Mother. She testified she was "willing to do whatever the [c]ourt believe[d] best for [J.E.]" During Mother's testimony, Mother testified that her bond with J.E. was strong and that she engaged in regular virtual visits with J.E. as well as monthly in-person visits.

¶7        The juvenile court terminated Mother's rights under A.R.S. § 8-533(B)(4). The court found termination of parental rights was in J.E.'s best interests. The court also denied Mother's motion to appoint Aunt as a permanent guardian. Mother appealed, and we have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

I.    **Mother Does Not Dispute the Juvenile Court's Finding That Termination of Her Parental Rights Was Warranted Under A.R.S. § 8-533(B)(4) and in J.E.'s Best Interests.**

¶8        A parent-child relationship may be terminated if a party proves by: (1) clear and convincing evidence that a ground for termination exists under A.R.S. § 8-533(B); and (2) the preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 22 (2005); A.R.S. § 8-533(A)-(B). Here, the juvenile court concluded DCS proved by: (1) clear and convincing evidence that A.R.S. § 8-533(B)(4) [was] an appropriate ground for termination; and (2) the preponderance of the evidence that termination of Mother's parental rights was in J.E.'s best interests. Mother does not appeal these findings, so we do not review them.

II.   **The Juvenile Court Did Not Err by Terminating Mother's Parental Rights and Denying Her Motion to Appoint a Guardian.**

¶9        Mother argues the court violated the Arizona Parent's Bill of Rights by denying her motion to appoint a permanent guardian. *See* A.R.S. § 1-601. Section 1-601(B) recognizes the court's authority to terminate parental rights when statutory requirements have been met so long as, *inter alia*, other "less restrictive means" are not available. Mother contends guardianship would have been a less restrictive means that could have protected J.E. while also keeping her parental rights intact. Because Mother did not advance her argument under A.R.S. § 1-601 before the juvenile court, we review it for fundamental error. *See Brenda D. v. Dep't of Child*

*Safety*, 243 Ariz. 437, 447-48 ¶¶ 37-38 (2018).  To show fundamental error, Mother must show "(1) error exists, (2) the error is fundamental, and (3) the error caused [her] prejudice." *Id.* at 447-48 ¶ 38 (cleaned up).  As we next explain, Mother fails to demonstrate any error, and thus fails to show fundamental error.

¶10        To appoint a permanent guardian under A.R.S. § 8-871, as Mother requests, the juvenile court must find that either the likelihood of adoption is "remote" or that termination of parental rights would not be "in the child's best interests."   A.R.S. § 8-871(A)(4).   Mother's appeal demonstrates no error because she fails to show either that  (1) adoption was remote or that (2) termination would not be in J.E.'s best interests.

¶11        First, the likelihood of adoption is not remote.  J.E.'s case manager testified J.E. was adoptable and Aunt was a prospective adoptive placement.  The juvenile court thus found termination in J.E.'s best interests because he "is considered adoptable and another adoptive placement could be located should the current placement be unable to adopt."  *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148 ¶ 1 (2018) (holding that in evaluating best interests of a child, "courts must consider the totality of the circumstances . . . including the child's adoptability").  Because record evidence supports this finding, Mother has shown no error.

¶12        Second, Mother does not contest in this appeal that termination of her parental rights was in J.E.'s best interests under A.R.S. § 8-533(B).   A parent waives the opportunity to contest the court's best interests findings on appeal if they concede they are correct for another purpose. *Cf. Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577-78 ¶ 5 (App. 2017) (failing to challenge statutory ground on appeal waives argument challenging any other statutory ground as the court need only find one).  For this reason, she cannot show termination of her parental rights would not be in J.E.'s best interests.

## CONCLUSION

¶13        We affirm.

